IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RAM HOTEL MANAGEMENT, LLC; NIRAVANA HOSPITALITY, LLC; COLUMBUS HOSPITALITY, LLC; RAM ALPHARETTA HOSPITALITY, LLC; RAJABHINAND HOTEL, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> HARTFORD FIRE INSURANCE COMPANY; CITY OF ALPHARETTA, <br><br> Defendants. | Case No. 1:21-CV-_____ |

## NOTICE OF REMOVAL

Defendant Hartford Fire Insurance Company ("HFIC"), by and through its undersigned counsel, hereby provides notice pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 of the removal of *RAM Hotel Management LLC, et al. v. Hartford Fire Insurance Company, et al.*, Case No. 2021CV345760, from the Superior Court of Fulton County, Georgia, to the United States District Court for the Northern District of Georgia, Atlanta Division. Diversity jurisdiction exists because information in the Complaint and publicly available shows that there is complete diversity among the properly joined parties and that the amount in controversy exceeds $75,000. The

properly joined parties are Plaintiffs and HFIC. The City of Alpharetta is fraudulently joined because the claims against it are impossible or, in the alternative, are entirely unrelated to the insurance coverage dispute between Plaintiffs and HFIC and should be severed. In accordance with 28 U.S.C. § 1446(a), HFIC provides the following statement of the grounds for removal:

## I.   BACKGROUND

1.    On February 11, 2021, Plaintiffs[1] filed a Complaint in the Superior Court of Fulton County, Georgia, in the civil action styled *RAM Hotel Management LLC, et al. v. Hartford Fire Insurance Co., et al.*, Case No. 2021CV345760 ("State Court Action"). HFIC was served with the Complaint on February 18, 2021.

2.    On March 4, 2021, Plaintiffs filed their First Amended Complaint ("FAC"). In the FAC, Plaintiffs allege that HFIC issued a business insurance policy to RAM Hotel Management, LLC in 2019 and renewed the policy in 2020 (collectively, "the Policies"), and that the Policies insured all Plaintiffs. (FAC ¶¶ 7, 15.) Plaintiffs allege they lost business income as a result of the COVID-19 pandemic and the governmental orders issued in response to it. (*Id.* ¶¶ 22–23, 25.) Plaintiffs assert that those losses are covered by the Policies. (*See id.* ¶ 24.)

---

[1]    Plaintiffs are 5 limited liability companies: RAM Hotel Management, LLC; Niravana Hospitality, LLC; Columbus Hospitality, LLC; RAM Alpharetta Hospitality, LLC; and RajAbhinand Hotel, LLC.

3.     Plaintiffs assert three causes of action against HFIC in the FAC. Count One seeks a declaratory judgment that the Policies provide coverage for certain alleged COVID-19-related losses. (*See id.* ¶¶ 28–38.) Count Two alleges that HFIC breached the insurance contract with Plaintiffs and seeks at least $2,100,000 in alleged lost profits. (*See id.* ¶¶ 39–41.) Count Three asserts that HFIC acted in bad faith and is liable for both alleged lost profits and punitive damages. (*See id.* ¶¶ 42–46.)

4.     This action is properly removed. The procedural requirements of removal have been met, and information that was provided by Plaintiffs in the FAC, that is publicly available, or that is associated with the Policies shows that this Court has subject-matter jurisdiction.

## II.    THE PROCEDURAL REQUIREMENTS OF REMOVAL ARE MET

5.     True and correct copies of all process, pleadings, and orders served on HFIC in the State Court Action are attached as Exhibit A to this Notice. 28 U.S.C. § 1446(a).

6.     This Notice of Removal is filed within thirty (30) days after the receipt by HFIC, through service, of a copy of the initial Complaint in the State Court Action. Thus, removal is timely. 28 U.S.C. § 1446(b).

7.     This Court presides in the locality in which the State Court Action was

filed. It is thus a proper forum for removal. 28 U.S.C. § 90(a)(2).

8.     No properly joined defendant is a citizen of Georgia, the state where this action was brought. 28 U.S.C. § 1441(b)(2).

9.     A Notice of Filing Notice of Removal, with a copy of this Notice attached, will be promptly served on Plaintiffs' counsel and filed with the Clerk of Court for the Superior Court of Fulton County, Georgia. *See* 28 U.S.C. § 1446(d).

## III.    THIS COURT HAS SUBJECT-MATTER JURISDICTION

10.     An action may be removed from state court to federal court if the action could have originally been brought in federal court. 28 U.S.C. § 1441(a). Here, federal jurisdiction exists based on diversity of citizenship under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and because the proper parties to this dispute are citizens of different states.

### A.    The Amount in Controversy is Satisfied

11.     The amount in controversy here exceeds the $75,000 threshold required by 28 U.S.C. § 1332(a).

12.     Removal is proper when it is "'facially apparent' from the pleading itself that the amount in controversy exceeds" $75,000. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)). "Eleventh Circuit precedent permits district

courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Id.* at 1061–62 (quoting *Pretka*, 608 F.3d at 770). Likewise, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.* at 1062.

13.     Here, the amount "in controversy" exceeds $75,000, exclusive of interest and costs, for three reasons.[2]

14.     *First*, in Count Two of their FAC, Plaintiffs allege they "have sustained losses and damages," including supposed "lost profits," as a result of HFIC's determination that the Policies do not provide coverage. (FAC ¶ 41.) Plaintiffs allege that their "lost profits to date have exceeded $2,100,000." (*Id.*; *see id.* ¶ 25.) They also allege that "lost profits … are anticipated to exceed $5,700,000." (*Id.* ¶ 25.) Plaintiffs demand their supposed lost profits as a compensatory damages. (*Id.* at "wherefore" paragraph following ¶ 41.)

---

[2]     HFIC denies Plaintiffs' allegations and denies that Plaintiffs are entitled to any relief against HFIC. That said, in evaluating whether diversity jurisdiction exists, the relevant inquiry is the amount "in controversy"—not Plaintiffs' likelihood of success on the merits. *See Pretka*, 608 F.3d at 751 ("[A] plaintiff's likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are likely to recover." (citation omitted)).

15. *Second*, in Count Three of their FAC, Plaintiffs demand punitive damages on top of compensatory damages. (*See id*. at "wherefore" paragraph following ¶ 46.) Though punitive damages are unavailable, *see Armstead v. Allstate Prop. & Cas. Ins. Co.*, No. 14-cv-586-WSD, 2014 WL 6810727, at *11 (N.D. Ga. Dec. 3, 2014), Georgia law permits a 50% penalty in insurance bad-faith cases, *see* O.C.G.A. § 33-4-6. Plaintiffs' alleged compensatory damages alone easily exceed $75,000. When combined with Plaintiffs' allegations of bad faith and the possibility of a 50% bad-faith penalty, it is even more certain that the amount in controversy exceeds $75,000. *See, e.g.*, *Thomaier v. Companion Life Ins. Co.*, No. 20-cv-39, 2020 WL 7134089, at *2 (M.D. Ga. June 29, 2020) (finding that the amount in controversy exceeded $75,000 due to the bad-faith penalty); *LaFoy v. Fed. Ins. Co.*, No. 16-cv-1169-CC, 2016 WL 10567789, at *2 (N.D. Ga. Sept. 23, 2016) (similar).

16. *Third*, Plaintiffs demand attorneys' fees. (*See* FAC at "wherefore" paragraph following ¶ 46.) Georgia insurance law authorizes the recovery of attorneys' fees in insurance bad-faith cases. O.C.G.A. § 33-4-6. Thus, "a reasonable amount of those fees is included in the amount in controversy." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000). The potential recovery of attorneys' fees further confirms that the amount in controversy exceeds $75,000. *See, e.g.*, *Ramos v. Aetna Life Ins. Co.*, No. 17-cv-160-CAP, 2017 WL 7805607, at *1 (N.D. Ga. Feb.

17, 2017) (finding that the amount in controversy exceeded $75,000 based on the possibility of attorneys' fees under O.C.G.A. § 33-4-6).

17.     In sum, the demands in the FAC establish that the amount in controversy exceeds the jurisdictional threshold. *See* 28 U.S.C. § 1446(c)(2)(B).

**B.     There is Complete Diversity of Citizenship Between the Properly Joined Parties**

18.     As discussed below in Section II.C, Plaintiffs and HFIC are the only proper parties to this lawsuit. Based on information that was provided by Plaintiffs in the FAC, made publicly available, or associated with the Policies, the properly joined parties are completely diverse from one another.

19.     RAM Hotel Management, LLC is a limited liability company organized under Georgia law. Its members are Rinkesh Patel, Mitesh Patel, and Prakashchandra Patel.

20.     Niravana Hospitality, LLC is a limited liability company organized under Georgia law. Its members are Rinkesh Patel, Mitesh Patel, Amita Desai, Prakash Desai, and Raju Sundari.

21.     Columbus Hospitality, LLC is a limited liability company organized under Georgia law. Its members are Naheed Ahmed, Sajid Ahmed, and Tariq Siddiqui.

22.     RAM Alpharetta Hospitality, LLC is a limited liability company orga-
nized under Georgia law. Its member is Rinkesh Patel.

23.     RajAbhinand Hotel, LLC is a limited liability company organized un-
der Georgia law. Its members is Rinkesh Patel.

24.     Rinkesh Patel is a citizen and resident of the State of Georgia. He is
domiciled in that State.

25.     Mitesh Patel is a citizen and resident of the State of Georgia. He is dom-
iciled in that State.

26.     Prakashchandra Patel is a citizen and resident of the State of Georgia.
He is domiciled in that State.

27.     Kalpana Desai is a citizen and resident of the State of Georgia. She is
domiciled in that State.

28.     Amita Desai is a citizen and resident of the State of Georgia. She is
domiciled in that State.

29.     Prakash Desai is a citizen and resident of the State of Texas. He is dom-
iciled in that State.

30.     Raju Sundari is a citizen and resident of the State of Georgia. She is
domiciled in that State.

31.     Tariq Siddiqui is a citizen and resident of the State of Alabama. He is

domiciled in that State.

32.     Naheed Ahmed is a citizen and resident of the State of Georgia. She is domiciled in that State.

33.     Sajid Ahmed is a citizen and resident of the State of Georgia. He is domiciled in that State.

34.     For the purpose of diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). Thus, based on the citizenship of their members, all Plaintiffs are citizens of Georgia. Niravana Hospitality, LLC is also a citizen of the State of Texas. Columbus Hospitality, LLC is also a citizen of the State of Alabama. No Plaintiff is a Connecticut citizen.

35.     HFIC is organized under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut. As a result, HFIC is a citizen of Connecticut. *See* 28 U.S.C. § 1332(c)(1). Further, HFIC is not a citizen of Georgia under the Acts of Congress relating to removal of cases.

36.     Because Plaintiffs are citizens of states different from the citizenship state of the only defendant whose citizenship may be considered for purposes of diversity jurisdiction, this case is "between … citizens of different States." 28 U.S.C.

§ 1332(a)(1). As a result, Section 1332's requirement of complete diversity has been satisfied.

## C. The City of Alpharetta Does Not Destroy Complete Diversity Because It Was Fraudulently Joined

37.     Plaintiff RAM Alpharetta Hospitality, LLC ("RAM Alpharetta") asserts causes of action against the City of Alpharetta, Georgia. Those causes of action stem from the City's adoption of an April 1, 2020, Shelter-in-Place Ordinance (the "Shelter-in-Place Ordinance") that restricted certain activities in the City.[3]

38.     In Count Four of the FAC, RAM Alpharetta alleges that the City "failed to investigate adequately the harm the coronavirus posed to the public" and "should have adopted less restrictive methods for addressing the spread of the coronavirus." (FAC ¶¶ 48–49.) RAM Alpharetta also alleges that the City "failed to investigate adequately" the economic harms that a shelter-in-place ordinance would cause. (*Id.* ¶ 48.) In essence, it contends that the costs of the City's Shelter-in-Place Ordinance outweighed that ordinance's benefits. (*See id.* ¶ 49.) RAM Alpharetta thus seeks to recover damages—including lost profits—from the City. (*Id.* at "wherefore" paragraph following ¶ 52.)

---

[3]     The Shelter-in-Place Ordinance is referenced in, and integral to, the FAC. (*See* FAC ¶ 20.) A copy of the Shelter-in-Place Ordinance is Exhibit B to this Notice of Removal and is publicly available online at https://library.municode.com/ga/ alpharetta/ordinances/code_of_ordinances?nodeId=1014481.

39.     In Count Five of the FAC, RAM Alpharetta alleges the City adopted the Shelter-in-Place Ordinance without first giving RAM Alpharetta "a meaningful opportunity to be heard" and in violation of the Due Process Clause of the Georgia Constitution. (*Id.* ¶ 53.) Once again, RAM Alpharetta thus seeks to recover damages—including lost profits—from the City. (*Id.* at "wherefore" paragraph following ¶ 55.)

40.     In Count Six of the FAC, RAM Alpharetta alleges that the Shelter-in-Place Ordinance "caused damage to RAM Alpharetta Hospitality and/or constituted a 'taking' of RAM Alpharetta Hospitality's property that requires just compensation" under the Georgia Constitution. (*Id.* ¶ 59.) RAM Alpharetta thus seeks to recover "lost income, revenues, and profits" from the City. (*Id.* at "wherefore" paragraph following ¶ 60.)

41.     Finally, in Count Seven of the FAC, RAM Alpharetta seeks a declaratory judgment that the acts alleged in Counts Four, Five, and Six violated the law. (*Id.* ¶¶ 61–62.)

42.     Though the City of Alpharetta is a putative defendant to this action, its joinder does not preclude diversity jurisdiction. Instead, this Court must ignore the City's presence because Plaintiffs made the City a defendant solely to defeat federal diversity jurisdiction.

43.     When evaluating whether it has diversity jurisdiction, this Court must ignore the presence of the fraudulently joined non-diverse defendant. *See Chambers v. State Farm Fire & Cas. Co.*, No. 20-cv-2643-TWT, 2020 WL 6504460, at \*2 (N.D. Ga. Nov. 5, 2020) (citing *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006)). The doctrine applies when "'there is no possibility the plaintiff can establish a cause of action against the resident defendant.'" *Snadon v. SEW-Eurodrive Inc.*, 421 F. Supp. 3d 1360, 1366 (N.D. Ga. 2019) (quoting *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011)). The removing party has the burden of showing fraudulent joinder by clear and convincing evidence. *See Manley v. Ford Motor Co.*, 17 F. Supp. 3d 1375, 1381 (N.D. Ga. 2014).

44.     The fraudulent-joinder analysis is "'based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.'" *Elder v. State Farm Fire & Cas. Co.*, No. 19-cv-5077-SDG, 2020 WL 4530315, at \*2 (N.D. Ga. May 15, 2020) (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)). If, given those materials, there is "'a possibility that a state court would find that the complaint states a cause of action against … the resident defendant[],'" then joinder was proper. *Snadon*, 421 F. Supp. 3d at 1366 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). "'The potential for legal liability,'" however, "'must be reasonable, not

merely theoretical,'" to warrant a remand to state court. *Shannon v. Albertelli Firm, P.C.*, 610 F. App'x 866, 870 (11th Cir. 2015) (per curiam) (quoting *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005)).

45.     For the reasons discussed below, RAM Alpharetta has no possibility of stating a valid claim against the City of Alpharetta. Thus, this Court must disregard the City's citizenship when determining whether this case is removable.

### 1. The City of Alpharetta had the statutory authority to enact the Shelter-in Place Ordinance

46.     The City of Alpharetta is a political division of the State of Georgia. *See Spence v. Rowell*, 97 S.E.2d 350, 353 (Ga. 1957). As a government body, it has the inherent "'right to protect itself against an epidemic of disease which threatens the safety of its members.'" *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 466 (5th Cir. 2021) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905)).

47.     Georgia law recognizes that right. The City's Charter codifies the police power "[t]o define, regulate and prohibit any act, practice, conduct or use of property which is detrimental to health, sanitation, cleanliness, welfare, and safety of the inhabitants of the City, and to provide for the enforcement of such standards." Act of Feb. 25, 1981, § 1.13(40), 1981 Ga. Laws 4609, 4617. The City also has the authority "to make, amend, and rescind such orders, rules, and regulations as may be necessary for emergency management purposes." O.C.G.A. § 38-3-28(a); *see id.* § 38-3-3(2)

(defining "emergency management"). These police powers are "coextensive with the necessities of the case and the safeguard of public interest." *Pope v. City of Atlanta*, 249 S.E.2d 16, 18 (Ga. 1978).

48.     In the Shelter-in-Place Ordinance, the Mayor and Council of the City found that: (a) "the COVID-19 global pandemic is a public emergency affecting and threatening life, health, property, and public peace"; (b) "it [was] necessary to ensure that the largest possible number of residents of the City of Alpharetta shelter in place, self-quarantine, and/or self-isolate in their place of residence"; and (c) the Shelter-in-Place Ordinance was "necessary to protect life, health, property, and public peace." (Ex. B at 3.) As a result, there can be no debate that the City had the authority to enact the Shelter-in-Place Ordinance.

## 2. The City of Alpharetta is entitled to sovereign immunity

49.     Under Georgia law, municipal corporations have sovereign immunity. *See* GA. CONST. art. I, § 2, para. IX(e); *Atl. Metro Leasing, Inc. v. City of Atlanta*, 839 S.E.2d 278, 283 (Ga. Ct. App. 2020). That immunity bars even intentional tort claims. *See Mayor & Aldermen of City of Savannah v. Radford*, 401 S.E.2d 709, 709–10 (Ga. 1991); *Dietrich-Barnes v. Alexander*, No. 05-cv-1751-TCB, 2007 WL 9701407, at *6 (N.D. Ga. Aug. 22, 2007). Only the Georgia General Assembly can waive that immunity. *See CSX Transp., Inc. v. City of Garden City*, 588 S.E.2d 688,

689 (Ga. 2003).

50.     The General Assembly has declared "it is the public policy of the State
of Georgia that there is no waiver of the sovereign immunity of municipal corpora-
tions." O.C.G.A. § 36-33-1(a). In particular, cities "shall not be liable for failure to
perform or for errors in performing their legislative … powers." *Id.* § 36-33-1(b).
There is, however, a limited waiver of immunity for claims of "neglect to perform
or improper or unskillful performance of … ministerial duties." *Id.* Thus, cities "are
immune from liability for acts taken in performance of a governmental function but
may be liable for the negligent performance of their ministerial duties." *City of At-
lanta v. Mitcham*, 769 S.E.2d 320, 323 (Ga. 2015).

51.     Whether a function is "governmental" or "ministerial" "focuses broadly
on the nature, purpose, and intended beneficiaries of the function performed by the
municipal corporation." *Mitcham*, 769 S.E.2d at 325. Governmental functions have
"'a purely public nature, intended for the benefit of the public at large, without pre-
tense of private gain to the municipality.'" *Atl. Metro Leasing*, 839 S.E.2d at 284
(citation omitted). Ministerial functions, by contrast, involve "'the exercise of some
private franchise, or some franchise conferred upon the municipal corporation by
law which it may exercise for the private profit or convenience of the corporation or

for the convenience of its citizens alone, in which the general public has no inter-

est.'" *Id.* (citation omitted). Thus, "[a]ctivities that are undertaken primarily for pub-

lic benefit rather than for revenue production are governmental functions." *City of*

*Atlanta v. Durham*, 751 S.E.2d 172, 174 (Ga. Ct. App. 2013).

52.    When it enacted the Shelter-in-Place Ordinance, the City of Alpharetta

performed a governmental function—not a ministerial function. It enacted the Ordi-

nance to protect public health. *See Barr v. City Council of Augusta*, 58 S.E.2d 820,

822 (Ga. 1950) ("The preservation of the public health is a governmental function.").

Likewise, it enacted the Ordinance to benefit the general public. It did not enact the

Ordinance to increase revenue or benefit itself. The City is therefore entitled to sov-

ereign immunity.

53.    Because the City is entitled to sovereign immunity, there is no possibil-

ity that RAM Alpharetta could recover for its tort claims against the City. The City

was therefore fraudulently joined. *See Jibbie Jabbie v. Sportsfield Specialities, Inc.*,

No. 07-cv-651-MHS, 2007 WL 9706420, at *3–4 (N.D. Ga. June 22, 2007) (holding

that a school district was fraudulently joined because the district was entitled to sov-

ereign immunity).

### 3. The City of Alpharetta did not violate procedural due process when it enacted the Shelter-in Place Ordinance

54.     RAM Alpharetta alleges that the City "denied [it] a meaningful opportunity to be heard" before it enacted the Shelter-in-Place Ordinance. (FAC ¶ 54.) That is an apparent reference to procedural due process. There is, however, no possibility that RAM Alpharetta can state a valid procedural due-process claim against the City.

55.     In procedural-due-process cases, the U.S. Supreme Court "has long distinguished between legislative and adjudicative action." *Jones v. Governor of Fla.*, 975 F.3d 1016, 1048 (11th Cir. 2020) (en banc) (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915)). As the Supreme Court held in *Bi-Metallic Investment Co. v. State Board of Equalization*, when a rule "applies to more than a few people," there is no need "that everyone should have a direct voice in its adoption." 239 U.S. at 445. Put differently, when a legislature enacts legislation through the legislative process, "the affected persons are not entitled to *any* process beyond that provided by the legislative process." *Jones*, 975 F.3d at 1048; *see also 75 Acres, LLC v. Miami-Dade Cnty.*, 338 F.3d 1288, 1294 (11th Cir. 2003) ("When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process." (citation omitted)).

56.     Georgia courts follow *Bi-Metallic*'s reasoning when interpreting Georgia law. *See Ogletree v. Woodward*, 105 S.E. 243, 246 (Ga. 1920); *Griggs v. Greene*, 197 S.E.2d 116, 124 (Ga. 1973), *abrogated on other grounds as recognized in SJN Props., LLC v. Fulton Cnty. Bd. of Assessors*, 770 S.E.2d 832, 838 n.6 (Ga. 2015); *see also Short Term Rental Owners Ass'n of Ga., Inc. v. Cooper*, No. 19-cv-108-RWS, 2021 WL 389776, at \*7 n.6 (N.D. Ga. Jan. 22, 2021) (stating that the Georgia Constitution's Due Process Clause is generally "coterminous" with the U.S. Constitution's). Thus, under Georgia law, when a legislature takes a legislative action, the legislative process *is* due process. *Cf. Coppedge v. Coppedge*, 783 S.E.2d 94, 99 (Ga. 2016) (explaining that what process is "due" depends, in part, on "'the nature of the proceedings'" (citation omitted)).

57.     The Shelter-in-Place Ordinance was a legislative act. The Mayor and City Council—which together have the City's legislative powers—enacted the Ordinance. *See* Act of Feb. 25, 1981, § 2.10, 1981 Ga. Laws 4609, 4618. In doing so, the City exercised its legislative judgment about how best to protect the public as a whole. The Ordinance applied generally; it was not targeted at a particular group. And the Ordinance applied prospectively only—not retroactively. Those facts are hallmarks of legislation. *See 75 Acre*, 338 F.3d at 1296; *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1289 (11th Cir. 2020) (Lagoa, J., concurring).

58.     Because the Shelter-in-Place Ordinance was a legislative act, RAM Alpharetta received due process of law. *See Jones*, 975 F.3d at 1048. "The Constitution does not require all public acts to be done in town meeting or an assembly of the whole." *Bi-Metallic*, 239 U.S. at 445. Instead, RAM Alpharetta's interests "are protected in the only way that they can be in a complex society" facing an emergency: "by [its] power, immediate or remote, over those who make the rule." *Id.* That is, in the next election cycle, RAM Alpharetta can oppose the re-election of the Mayor and the members of the City Council.

59.     For these reasons, it does not matter whether RAM Alpharetta had a chance to address the City Council before it adopted the Shelter-in-Place Ordinance. Moreover, RAM Alpharetta alleges no facts about how the City adopted the Shelter-in-Place Ordinance, and it does not allege the City failed to follow the proper legislative procedures.

60.     As a result, there is no possibility that the City violated procedural due process when it enacted the Shelter-in-Place Ordinance.

### 4. The City of Alpharetta did not violate substantive due process when it enacted the Shelter-in Place Ordinance

61.     In Count Five of the FAC RAM Alpharetta also references substantive due-process claim. But the Shelter-in-Place Ordinance "carries with it a presumption of constitutionality." *Old S. Duck Tours v. Mayor & Aldermen of City of Savannah*,

535 S.E.2d 751, 754 (Ga. 2000). Under Georgia law, there is no possibility that any substantive-due-process claim would survive.

62.     RAM Alpharetta does not allege that the Shelter-in-Place Ordinance burdens its fundamental rights or is based on a suspect classification. Instead, it asserts only that the Shelter-in-Place Ordinance affected its economic interests. Thus, "a rational relationship test is applied to determine whether the [ordinance] violates substantive due process." *Gasses v. City of Riverdale*, 701 S.E.2d 157, 159 (Ga. 2010). Under that test, the Shelter-in-Place Ordinance "is a valid exercise of a police power 'if it is substantially related to the public health, safety, or general welfare.'" *Advanced Disposal Servs. Middle Ga., LLC v. Deep S. Sanitation, LLC*, 765 S.E.2d 364, 367 (Ga. 2014) (quoting *City of Lilburn v. Sanchez*, 491 S.E.2d 353, 355 (Ga. 1997)). This is not a question about the wisdom of the Ordinance, however. *See id.* at 368 n.5. Rather, if the Ordinance "realistically serves a legitimate public purpose" and "employs means that are reasonably necessary to achieve that purpose without unduly oppressing the individuals regulated," the Ordinance survives a due- process challenge. *City of Lilburn*, 491 S.E.2d at 355.

63.     The City has a *compelling* interest in protecting the public from disease. Given the facts that the Mayor and City Council knew or could have known, it was indisputably reasonable for the City to enact the Shelter-in-Place Ordinance. *See*

*Vill. of Orland Park v. Pritzker*, 475 F. Supp. 3d 866, 885 (N.D. Ill. 2020) (stating that COVID-19 orders would "easily" pass rational-basis review); *910 E Main LLC v. Edwards*, 481 F. Supp. 3d 607, 621 (W.D. La. 2020) (similar), *aff'd sub nom. Big Tyme Invs.*, 985 F.3d 456 (5th Cir. 2021). This is all the more true given the medical and scientific uncertainties that were especially present in the early days of the COVID-19 pandemic. RAM Alpharetta cannot show otherwise, so courts should not second-guess the politically accountable officials about how best to protect public health. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief).

64.     RAM Alpharetta therefore has no possibility of maintaining a substantive-due-process claim against the City.

### 5. The City of Alpharetta did not take or damage property when it enacted the Shelter-in-Place Ordinance

65.     RAM Alpharetta asserts that the City violated the Georgia Constitution's rule that "private property shall not be taken or damaged for public purposes without just and adequate compensation." GA. CONST. art. I, § 3, para. I(a). But there is no chance that the Shelter-in-Place Ordinance took or damaged RAM Alpharetta's property. Thus, Count Six of the FAC must fail.

66.     In general, there are two types of "takings" under Georgia law: physical and regulatory. Neither exists here.

67. First, the "physical occupation of (or impact on) property" is a per se

taking. *Diversified Holdings, LLP v. City of Suwanee*, 807 S.E.2d 876, 886 (Ga.

2017) (Grant, J.); *cf. Horne v. Dep't of Agric.*, 576 U.S. 350, 357–58 (2015) (dis-

cussing the physical appropriation of property). Here, the City of Alpharetta did not

physically take or occupy any of RAM Alpharetta's property. Nor did the City dam-

age any property.[4] Nor did it interfere with RAM Alpharetta's right to enjoy the

possession of its property. Nor did it create any sort of "nuisance" or "trespass." It

did not, for example, expose RAM Alpharetta's property to noise, smoke, odor, vi-

brations, flood, silt, or pollution. *See, e.g.*, *Rabun Cnty. v. Mtn. Creek Estates, LLC*,

632 S.E.2d 140, 143 (Ga. 2006); *MARTA v. Trussell*, 273 S.E.2d 859, 861 (Ga.

1981). The Shelter-in-Place Ordinance simply regulated interactions between peo-

ple. RAM Alpharetta's rights to use and enjoy its property remained the same as

before the Shelter-in-Place Ordinance. Thus, the Shelter-in-Place Ordinance is not a

physical taking. *See Parking Ass'n of Ga., Inc. v. City of Atlanta*, 450 S.E.2d 200,

202 (Ga. 1994) (holding that an ordinance that "merely regulates the use of … prop-

erty" was not a physical taking); *cf. Yee v. City of Escondido*, 503 U.S. 519, 528–29

---

[4] Though the FAC alleges that the Shelter-in-Place Ordinance "caused damage to RAM Alpharetta" (FAC ¶ 59), it does not—and cannot—allege that the Ordinance damaged RAM Alpharetta's *property*. The Georgia Constitution refers only to prop-erty damage. *See* GA. CONST. art. I, § 3, para. I(a).

(1992).

68. Second, a regulation can go too far and thus constitute a taking. *Cf. Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). This type of "regulatory taking" can happen in one of two ways, neither of which occurred here.

69. Georgia courts have suggested that a per se taking occurs when a regulation "completely" deprives the owner "of the use of the property." *Diversified Holdings*, 807 S.E.2d at 886; *see Threatt v. Fulton Cnty.*, 467 S.E.2d 546, 550 (Ga. 1996); *cf. Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992) (explaining that, under the Fifth Amendment, a taking occurs "where regulation denies all economically beneficial or productive use of land"). But courts "generally conclude that so long as an ordinance allows some permissible use, a party will not be able to satisfy its burden of showing a complete lack of economically viable use." *Greater Atl. Homebuilders Ass'n v. DeKalb Cnty.*, 588 S.E.2d 694, 697 (Ga. 2003). That is not the case here. RAM Alpharetta can still use its property, and it has always been allowed to use it for economic purposes. RAM Alpharetta may make less money now than before, but even if that were the City's fault, "diminution of value itself does not constitute a constitutional deprivation." *Holy Cross Lutheran Church v. Clayton Cnty.*, 354 S.E.2d 151, 153 (Ga. 1987). And even if RAM Alpharetta could

not use its property for any economic purpose, "a fee simple estate cannot be rendered valueless by a temporary prohibition on economic use, because the property will recover value as soon as the prohibition is lifted." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 332 (2002). Because both the COVID-19 pandemic and the Shelter-in-Place Ordinance are temporary, there is no categorical regulatory taking.

70.    When a regulation does not strip property of all economically viable uses, Georgia courts use a balancing test to determine whether a regulation goes too far. *See, e.g.*, *Mann v. Ga. Dep't of Corr.*, 653 S.E.2d 740, 743 (Ga. 2007); *Pope v. City of Atlanta*, 249 S.E.2d 16, 19 (Ga. 1978).[5] The question is whether the challenged regulation's effect is "'functionally comparable to government appropriation or invasion of private property.'" *Diversified Holdings*, 807 S.E.2d at 887 (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)). That is, the regulation must be "'so onerous that its effect is tantamount to a direct appropriation or ouster.'" *Id.* at 886 (quoting *Mann v. Ga. Dep't of Corr.*, 653 S.E.2d 740, 743 (Ga. 2007)).

---

[5]    *Cf. Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017) (explaining that, under the Fifth Amendment, courts consider "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action").

71.     But in this analysis, Georgia courts recognize "a basic distinction be-

tween police power and that of eminent domain." *Mayor & Aldermen of City of Sa-*

*vannah v. Savannah Cigarette & Amusement Servs., Inc.*, 476 S.E.2d 581, 582 (Ga.

1996) (citing *Graduous v. Bd. of Comm'rs of Richmond Cnty.*, 349 S.E.2d 707, 709

(Ga. 1986)). When a state exercises its police powers, a taking does not occur. *See*

*Amica Mut. Ins. Co. v. Gwinnett Cty. Police Dep't*, 738 S.E.2d 622, 624 (Ga. Ct.

App. 2013). As the Georgia Supreme Court put it, "[t]he provisions of the Constitu-

tion of Georgia … prohibiting the taking of private property for a public purpose

without compensation *have no relevance* to the exercise of the police power." *Lewis*

*v. DeKalb Cnty.*, 303 S.E.2d 112, 115 (Ga. 1983) (emphasis added); *cf. Lech v. Jack-*

*son*, 791 F. App'x 711, 719 (10th Cir. 2019) (holding that "actions taken pursuant to

the police power do not constitute takings").

72.     Here, RAM Alpharetta cannot establish that the Shelter-in-Place Ordi-

nance was so onerous as to constitute a taking. Even if RAM Alpharetta lost profits

that it would not have expected to lose, its losses will be temporary, and the Shelter-

in-Place Ordinance does not affect its ability to sell its property. The property retains

value.

73.     Further, the nature of the Shelter-in-Place Ordinance prevents it from

constituting a taking. When the City enacted that law on April 1, 2020, COVID-19

was a public-health emergency about which little was known, and the City found the Ordinance was "necessary to protect life, health, property, and public peace." That is, the City decided to protect lives by slowing down the economy across the board.

74.     For similar reasons, courts nationwide have flatly rejected the argument that governmental responses to COVID-19 took property without just compensation in violation of the Fifth Amendment of the U.S. Constitution. *See, e.g.*, *Daugherty Speedway, Inc. v. Freeland*, No. 20-cv-36, 2021 WL 633106, at \*5 (N.D. Ind. Feb. 17, 2021) (granting motion to dismiss); *Blackburn v. Dare Cnty.*, No. 20-cv-27, 2020 WL 5535530, at \*5–8 (E.D.N.C. Sept. 15, 2020) (same); *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 401–02 (N.D.N.Y. 2020) (same); *see also TJM 64, Inc. v. Harris*, 475 F. Supp. 3d 828, 839–40 (W.D. Tenn. 2020) (denying a temporary restraining order and finding that the plaintiff was unlikely to prevail on the merits); *PCG-SP Venture I LLC v. Newsom*, No. 20-cv-1138, 2020 WL 4344631, at \*10 (C.D. Cal. June 23, 2020) (same). There is no possibility that a court applying Georgia law could come to a different conclusion.

75.     Finally, just compensation for taking or damaging property ensures that a small group of people do not bear a burden that the public as a whole should bear. The Shelter-in-Place Ordinance burdened (and benefitted) everyone. *Cf. Hillman v. Dep't of Transp.*, 359 S.E.2d 637, 639 (Ga. 1987) ("Inconvenience suffered by the

public in general … does not amount to a taking under the constitution."). If the City had to reimburse every business for lost profits due to COVID-19 restrictions, government could not function.

76.     Thus, there is no possibility that RAM Alpharetta could show that the City violated the Georgia Constitution's prohibition against taking or damaging property without just compensation.[6]

### 6. RAM Alpharetta is not entitled to a declaratory judgment

77.     In Count Seven of its FAC, RAM Alpharetta seeks a declaratory judgment that: (a) the City "negligently, wantonly, recklessly, arbitrarily, and capriciously" enacted the Shelter-in-Place Ordinance; (b) the City failed to consider the "economic harm" the Shelter-In-Place Ordinance would cause businesses; (c) the Shelter-In-Place Ordinance was not narrowly tailored to protect Plaintiffs' business interests; (d) adopting the Shelter-In-Place Ordinance violated due process; and (e) the City must "provide just compensation for "loss and damage" caused by the Shelter-in-Place Ordinance. (FAC at "wherefore" paragraph following ¶ 62.)

---

[6]     Cases about the Georgia Constitution's Takings Clause once asked whether an ordinance was "insubstantially related to the public health, safety, morality and welfare." *Graduous*, 349 S.E.2d at 709–10. But recently, the Georgia Supreme Court explained that "this type of claim is rooted in due process guarantees … rather than in the government's authority to take private property." *Diversified Holdings*, 807 S.E.2d at 887. As explained above, RAM Alpharetta cannot state a valid due-process claim.

78.     A declaratory-judgment action, does not empower courts to decide moot questions or abstract propositions, or to give advisory opinions. *See City of Atlanta v. Atl. Indep. Sch. Sys.*, 838 S.E.2d 834, 837 (Ga. 2020). Instead, it is a means for deciding justiciable disputes about the legal rights, status, and relations of parties. *See id.* ("'The proper scope of declaratory judgment is to adjudge those rights among parties upon which their future conduct depends.'" (citation and emphasis omitted)). As explained above, Plaintiffs cannot prevail on their constitutional theories against the City of Alpharetta. Thus, Plaintiffs have no chance of obtaining a declaratory judgment against the City on those claims.

79.     In addition, the City's "sovereign immunity extends … to suits for declaratory relief." *Lathrop v. Deal*, 801 S.E.2d 867, 880 (Ga. 2017) (citing *Olvera v. Univ. Sys. of Ga.'s Bd. of Regents*, 782 S.E.2d 436, 438 (Ga. 2016)). Because Plaintiffs' non-constitutional claims about the Shelter-in-Place Ordinance do not go to the validity of that law, Plaintiffs cannot obtain a declaratory judgment on those issues. That is, the City is entitled to sovereign immunity.

80.     Finally, there is no possibility that a court could conclude that the Shelter-in-Place Ordinance is invalid. For the reasons discussed above, the City properly exercised its authority to protect the public. Thus, Plaintiffs' declaratory-judgment claim fails.

81.     After disregarding the City, complete diversity between the parties exists, and this Court has jurisdiction under 28 U.S.C. §§ 1332 and 1441.

### 7. **The City of Alpharetta Should Be Severed Because It Was Fraudulently Misjoined**

82.     Alternatively, because the City of Alpharetta was fraudulently misjoined to this action, the claims against the City should be severed. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

83.     Joinder of a defendant under Rule 20 of the Federal Rules of Civil Procedure requires (1) a claim for relief asserting joint, several, or alternative liability, (2) arising from the same transaction, occurrence, or series of transactions or occurrences, and (3) a common question of law or fact. FED. R. CIV. P. 20(a)(2). Here, RAM Alpharetta can meet none of those elements: There is no joint, several, or alternative liability alleged; the claims do not arise from the same transaction; and there are no common questions of fact. Thus, the City has been misjoined.

84.     The City's misjoinder is also "so egregious as to constitute fraudulent joinder." *Tapscott*, 204 F.3d at 1360. There is "no real connection" between RAM Alpharetta's claims against HFIC and RAM Alpharetta's claims against the City. *Id.*; *see Estate of Carter ex rel. Carter v. SSC Selma Operating Co.*, No. 19-cv-431, 2020 WL 3429040, at *6 (S.D. Ala. June 23, 2020).

85.    RAM Alpharetta's claims against its property insurer, HFIC, are entirely distinct from RAM Alpharetta's claims against the City. Counts One through Three are asserted against HFIC and relate to HFIC's purported contractual obligations to RAM Alpharetta. Counts Four through Seven against the City have no relationship to HFIC's contractual obligations. Rather, they seek to hold the City liable for its own actions associated with adopting the Shelter-in-Place Ordinance.

86.    The claims against HFIC for declaratory judgment, breach of contract, and bad faith all arise under the Policies. (*See* FAC ¶¶ 28–46.) To evaluate those claims, the Court will need to consider the terms of the contract and whether the alleged losses are covered. The Court will *not* need to consider whether the City of Alpharetta acted properly in adopting the Shelter-in-Place Ordinance. Simply put, there is no plausible reason the claims against HFIC and the City of Alpharetta should be asserted in the same lawsuit.

87.    The only alleged connection between the claims against each defendant is that they all arose out of the coronavirus pandemic. If that were a sufficient basis for joinder, then every person, business, and entity in the United States could potentially be joined in an action. That, of course, is not the law. *See* FED. R. CIV. P. 20(a); O.C.G.A. § 9-11-20; *Tapscott*, 204 F.3d at 1360.

88.     Courts have routinely decided that a common disaster affecting a plaintiff's relationship with separate defendants does not alone provide a factual nexus for joinder, including in the context of COVID-19. *See, e.g.*, *Ultimate Hearing Sols. II, LLC v. Hartford Underwriters Ins. Co.*, No. 20-cv-2401 (E.D. Pa. July 8, 2020), ECF No. 3 (severing causes of action based in breach of contract and bad faith "filed by two groups of plaintiffs located in four different states against five insurance companies involving two different contracts of insurance") (attached as Exhibit C); *Augustine v. Employers Mut. Cas. Co.*, No. 08-cv-1102, 2010 WL 4930317, at *16–17 (W.D. La. Nov. 30, 2010) (stating that property insurer, building contractor, and public adjuster defendants were fraudulently misjoined where only common factual episode was that claims arose out of property damage caused by Hurricane Rita); *Frankland v. State Farm Fire & Cas. Co.*, No. 07-cv-1767, 2008 WL 4072819, at *5 (W.D. La. July 2, 2008) (concluding that private insurance adjuster and homeowner's insurer were misjoined where only common factual episode was hurricane damage), *report and recommendation adopted* (W.D. La. Aug. 26, 2028), ECF No. 30; *Willingham v. State Farm Ins. Co.*, 09-cv-59, 2009 WL 2767679, at *4–5 (N.D. Miss. Aug. 27, 2009) (concluding that home insurer and builder were fraudulently misjoined when bad-faith claims against both arose out of fire damage to the plaintiff's home).

89.    Where there is no procedural basis for including a non-diverse party, like the City here, in the same action as the diverse party, there is a sufficient basis to conclude that the reason for including the non-diverse party was an effort to deprive a defendant of its right to removal. *See Tapscott*, 77 F.3d at 1360 (holding that an attempt to join resident defendants that had "no real connection" with the controversy was "so egregious as to constitute fraudulent joinder").

90.    Because there is no reasonable basis for joinder of the City except to defeat diversity, its joinder wrongfully deprives HFIC of its right to removal.

91.    Accordingly, the claims against the City should be disregarded because they are impossible. In the alternative, the claims against the City should severed from those against HFIC, and the HFIC claims should remain before this Court.

\* \* \* \* \*

92.    The allegations in this Notice of Removal are true and correct. This cause is within the jurisdiction of the United States District Court for the Northern District of Georgia, and this cause is removable to the United States District Court for the Northern District of Georgia, Atlanta Division.

93.    If any questions arise about the propriety of the removal of this action, HFIC requests the opportunity to submit a brief, present oral argument, and/or conduct jurisdictional discovery in support of its position that this action is removable.

94.   HFIC reserves all—and does not waive any—claims, defenses, and objections it may have, including all defenses in Rule 12(b) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 81(c)(2); *Kostelac v. Allianz Glob. Corp. & Specialty AG*, 517 F. App'x 670, 675 n.6 (11th Cir. 2013) (per curiam) (explaining that "removal of an action from state to federal court does not waive any Rule 12(b) defenses"); 5C ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 1395 (3d ed. 2020) ("A party who removes an action from a state to a federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections.").

## IV.   CONCLUSION

WHEREFORE, HFIC gives notice that this action has been removed from the Superior Court of Fulton County, Georgia, to the United States District Court for the Northern District of Georgia, Atlanta Division.

Date: March 19, 2021        Respectfully submitted,

/s/ *Christopher C. Frost*

Christopher C. Frost
  cfrost@maynardcooper.com
  Georgia Bar. No. 101084
Caleb C. Wolanek
  *Pro Hac Vice* Intended
  cwolanek@maynardcooper.com
MAYNARD COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
T: (205) 254-1000
F: (205) 254-1999

Sarah D. Gordon
  *Pro Hac Vice* Intended
  sgordon@steptoe.com
William L. Drake
  *Pro Hac Vice* Intended
  wdrake@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
T: (202) 429-3000
F: (202) 429-3902

*Attorneys for Defendant*
*Hartford Fire Insurance Company*

## CERTIFICATE OF SERVICE

I certify that the foregoing Notice of Removal was served on the following by placing a copy of the same in the United States Mail, first-class postage prepaid and properly addressed, this 19th day of March, 2021:

W. Donald Morgan, Jr.
Alston Lyle
MORGAN & LYLE, P.C.
P.O. Box 2056
1214 First Avenue, Suite 204
Columbus, GA 31902
T: (706) 221-5286
F: (706) 221-5066
dmorgan@morganandlyle.com
alyle@morganandlyle.com

James A. Harris, III
Clyde O. Westbrook, III
HARRIS & HARRIS, LLP
Shipt Tower, Suite 2450
420 20th Street North
Birmingham, AL 35203
T: 205-871-5777
F: 205-871-0029
jamey@harris-harris.com
tres@harris-harris.com

*Attorneys for Plaintiffs*

/s/ *Christopher C. Frost*
Of Counsel