IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| RAM HOTEL MANAGEMENT LLC,<br>NIRAVANA HOSPITALITY, LLC,<br>COLUMBUS HOSPITALITY, LLC,<br>RAM ALPHARETTA HOSPITALITY, LLC,<br>RAJABHINAND HOTEL, LLC | )<br>)<br>)<br>)<br>) | |
| | ) | **CASE NO.:** 2021CV345760 |
| Plaintiffs, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| V. | ) | |
| | ) | |
| HARTFORD FIRE INSURANCE | ) | |
| COMPANY, AND CITY OF ALPHARETTA, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED AND RESTATED COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

COME NOW PLAINTIFFS, and hereby amend and restate their Complaint to add claims for declaratory relief against the City of Alpharetta as follows:

### THE PARTIES

1.      The Plaintiffs in this action are four single-entity limited liability companies and a management company, RAM Hotel Management, LLC ("RAM Hotel Management"). All plaintiffs are Georgia limited liability companies.

2.      The four single-entity limited liability company Plaintiffs each own a single hotel and conduct business at their locations in Georgia. Plaintiff RAM Hotel Management does business throughout Georgia. Plaintiff RAM Alpharetta Hospitality, LLC ("RAM Alpharetta Hospitality") does business in the City of Alpharetta, Georgia.

3.      Defendant Hartford Fire Insurance Company ("Hartford") is a foreign insurance company registered to conduct business in Georgia. At all times relevant

1

[Notice of Removal, Exhibit A, Page 50]

Copy from re:SearchGA

hereto, Hartford conducted business in Fulton County, Georgia.

4.     Defendant City of Alpharetta is a municipal corporation located in Fulton County, Georgia.

## JURISDICTION

5.     This Court has jurisdiction pursuant to Article 6, § 1, ¶ I of the Georgia Constitution and Section 15-6-8 of the Code of Georgia.

## VENUE

6.     Venue is proper in Fulton County, Georgia pursuant to Sections 9-10-93 and 33-4-1 of the Georgia Code. The City of Alpharetta is located in Fulton County, a substantial part of the events giving rise to the claim occurred in Fulton County, one of the hotels insured by Hartford is located in Fulton County, and Hartford has done business in Fulton County at all times relevant hereto.

## FACTUAL BACKGROUND

7.     In 2019, Hartford issued a Special Multi-Flex Business Insurance Policy, no. 20 UUN KL7438, with a policy period of April 21, 2019 to April 21, 2020 (the "2019 Policy"). Plaintiff RAM Hotel Management is the named insured in the 2019 Policy. The 2019 Policy provided coverage for hotels located in Alabama and Georgia. Additional hotels located in Georgia and Alabama were added through subsequent endorsements to the 2019 Policy. As of March 4, 2020, four hotels located in Georgia were covered by the 2019 Policy. The 2019 Policy refers to the hotels and the RAM Hotel Management corporate offices as "Scheduled Premises." Plaintiffs paid all premiums required to maintain the 2019 Policy.

2

Copy from re:SearchGA

[Notice of Removal, Exhibit A, Page 51]

8.     Each of the four Georgia hotels is owned by a different single-entity limited liability company that is a Plaintiff in this action. Each of the four single-entity limited liability company Plaintiffs was named as an additional insured in the 2019 Policy or an endorsement thereto. A schedule showing the ownership of each hotel is attached hereto as Exhibit A.

9.     The 2019 Policy was an "all-risk" policy that included business interruption insurance coverage. Business interruption insurance coverage is intended to indemnify the insured against losses arising from the inability to continue normal business operations and functions due to loss or damage suffered as a result of an insured hazard. In the 2019 Policy, the business interruption insurance coverage was called "Business Income and Extra Expense Coverage." Under this coverage, Hartford agreed    to:

> pay up to the Business Income and Extra Expense Limit of Insurance  . . . for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary interruption of business operations during the Period of Restoration due to direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss at 'Scheduled Premises' where a limit of insurance is shown for Business Income and Extra Expense.

10.     In the 2019 Policy, the limit of insurance per occurrence under the "Business Income and Extra Expense Coverage" was $29,600,000. Through subsequent endorsements to the 2019 Policy, the limit was increased to $37,880,000.

11.     The "Business Income and Extra Expense Coverage" in the 2019 Policy included additional "Civil Authority" coverage, which extended the insurance:

> to apply to the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur when access to your 'Scheduled Premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of the 'Scheduled Premises.'

3

12.    The "Business Income and Extra Expense Coverage" in the 2019 Policy also included additional "'Fungus', Wet Rot, Dry Rot, Bacteria and Virus" coverage ("Virus Coverage"). The Virus Coverage applied whenever the presence of a virus resulted from a "specified cause of loss" other than fire or lightning or when the loss or damage was otherwise attributable to fungus, wet rot, dry rot, bacteria, or virus. The specified causes of loss were identified in the policy and included losses resulting from "vandalism." "Vandalism" is an undefined term in the 2019 Policy, but generally means an act intended to result in damage to property or injury to persons.

13.    The "Business Income and Extra Expense Coverage" in the 2019 Policy also included additional "Ingress and Egress" coverage ("Ingress and Egress" coverage). The Ingress and Egress coverage provided coverage when a covered cause of loss to property at premises contiguous to any of the Scheduled Premises prohibited ingress and egress to the Scheduled Premises.

14.    The 2019 Policy also provided extended income and future earnings coverages for business income losses incurred until business and income at the hotels are back to normal, up to two (2) years after the date of the cause of the loss.

15.    In 2020, Hartford renewed policy no. 20 UUN KL7438 with a policy period of April 21, 2020 to April 21, 2021 (the "2020 Policy"). The 2020 Policy provides coverage to RAM Hotel Management, the four single-entity limited liability companies, and the "Scheduled Premises" that is substantially similar to the coverage provided in the 2019 Policy. At inception, the limit of insurance (per occurrence) under the "Business Income and Extra Expense Coverage" of the 2020 Policy was $28,882,913. Plaintiffs have paid all premiums required to maintain the 2020 Policy. Plaintiffs were not involved in drafting

4

Copy from re:SearchGA

the substantive provisions in the 2019 Policy or the 2020 Policy.

16.     Sometime during or before 2019, the Chinese government was involved in developing, researching, and/or testing a novel "coronavirus," now known as SARS-CoV-2, at one or more laboratories located in or around Wuhan, China. As a result of conduct intended to cause damage and/or injury to persons and/or property, the coronavirus was released from one or more laboratories and began to spread among the local population. Many people exposed to the coronavirus became ill with a communicable disease now known as COVID-19.

17.     The coronavirus is transmitted through the air and through contact with physical surfaces. It remains infectious for an extended period in the air and on physical surfaces. Its presence causes loss and damage by rendering the air and any contaminated physical surfaces unsafe and a potential source of infection.

18.     In late 2019 or early 2020, the coronavirus migrated to the United States. The publication of instances of severe illness and death among aged or infirm persons stoked fears of an uncontrollable and apocalyptic pandemic. Those fears were based on an irrational belief that a significant number of people who become infected and develop COVID-19 will die. In fact, research shows that the infection fatality rate is something less than 1% among the entire population.

19.     Due to the coronavirus' presence in Georgia, on March 14, 2020, Governor Brian Kemp declared a state of emergency for the State of Georgia. By doing so, Georgia fell in line with several other states that lacked adequate knowledge of the disease but had peremptorily declared a public health emergency based on irrational fear, not science.

5

Copy from re:SearchGA

20.     On April 1, 2020, the City of Alpharetta adopted an emergency "shelter in place" ordinance that ordered residents to shelter in place due to the presence of the coronavirus. The order severely restricted residents' ability to travel to, from, and within the City of Alpharetta.

21.     On April 2, 2020, the State of Georgia issued a shelter in place order. The order severely restricted travel to and throughout the state of Georgia.

22.     Plaintiffs suffered direct physical loss and/or damage as a result of the coronavirus, COVID-19, the pandemic, the City of Alpharetta's shelter in place ordinance, the State of Georgia's shelter in place order, and/or similar orders issued in other states. The presence of the coronavirus damaged the Scheduled Premises and rendered them, and the area and property around and contiguous to them, unsafe. The coronavirus, COVID-19, the governmental orders, and/or fear of the pandemic caused a severe drop in Plaintiffs' business as travelers who otherwise would stay at Plaintiffs' hotels stayed at home or made alternative lodging arrangements. Every Plaintiff suffered significant losses year over year due to a precipitous decline in room rentals. The significant losses Plaintiffs have suffered as a result of the coronavirus, COVID-19, the pandemic, and/or the governmental orders fall within the coverage provisions of the 2019 Policy and the 2020 Policy.

23.     On or around May 1, 2020, Hartford's Agent/Broker, Marsh & McLennan Agency, LLC, provided Hartford with notice of claims under the 2019 Policy and the 2020 Policy on behalf of Plaintiffs due to loss and damage resulting from the coronavirus and the civil authority orders that interrupted Plaintiffs' business operations.

24.     On or around May 8, 2020, Hartford denied the claim. Hartford took the

6

Copy from re:SearchGA

position that it was not liable for any loss or damage related to the coronavirus or the civil authority orders. Counsel for Plaintiffs requested that Hartford reconsider the denial. Hartford did not respond.

25.    Since Hartford denied the claim, Plaintiffs have continued to sustain damages. Plaintiffs calculated their lost profits as of October 31, 2020 to be in excess of $2,100,000. Plaintiffs anticipate that before the disruptions caused by the coronavirus, COVID-19, the various shelter in place orders, the pandemic, and/or the fear and concern that has reduced travel in and to Georgia resolve and normal operations and income are restored, their lost profits damages will exceed $5,700,000. In addition, Plaintiffs have incurred substantial costs and expenses as a result of the coronavirus, the governmental orders, and/or fear of the pandemic.

26.    On September 29, 2020, Plaintiff RAM Alpharetta Hospitality provided the City of Alpharetta with a statutory notice of its claim relating to losses and damages it has sustained as a result of the City of Alpharetta's shelter in place ordinance.

27.    Plaintiffs have satisfied all conditions precedent to the maintenance of this action.

**COUNT ONE: DECLARATORY JUDGMENT**

28.    Plaintiffs adopt and incorporate paragraphs 1 – 27 as if fully set forth herein.

29.    Plaintiffs seek a declaratory judgment relating to the present controversy. A bona fide, actual, and present practical need exists for a declaratory judgment regarding Hartford's obligations under the 2019 Policy and the 2020 Policy. Plaintiffs and Hartford have actual, present, adverse, and antagonistic interests in the subject matter of the relief Plaintiffs request.

7

Copy from re:SearchGA

30.     The 2019 Policy and the 2020 Policy provide all risk coverage for the losses and damages caused by the coronavirus, COVID-19, the pandemic, the various shelter in place and stay at home orders issued by state and local governments, and/or the public's general fear of the pandemic. Plaintiffs' reasonable expectations were that the insurance policies would provide coverage for loss and damage resulting from viruses, communicable diseases, and governmental orders that resulted in the interruption of their businesses. This includes the current coronavirus, the pandemic, and/or the shelter in place orders.

31.     Plaintiffs sustained loss and damage as a direct result of the presence of the coronavirus and COVID-19, the governmental orders, and/or fear of the pandemic among the population. The coronavirus caused loss and/or damage to Plaintiffs' hotels. Due to the virus' presence, governmental orders, and/or the pandemic, individuals who otherwise would stay at Plaintiffs' hotels did not travel or made alternative lodging arrangements, resulting in an "interruption" of business operations at the hotels, as that term is defined in the 2019 Policy and the 2020 Policy.

32.     The 2019 Policy and the 2020 Policy do not contain any exclusions for loss or damage resulting from the coronavirus, COVID-19, communicable diseases, a pandemic, governmental orders, or fear of a pandemic. Such loss and damage does not logically align with any exclusion found in the 2019 Policy or the 2020 Policy. The policies' virus exclusion does not apply because the loss or damage falls outside the scope of the exclusion and/or within the scope of the Virus Coverage. Neither the virus exclusion nor any other exclusion specifically precludes coverage for the coronavirus, COVID-19,

8

Copy from re:SearchGA

communicable diseases, a pandemic, governmental orders, or fear of a pandemic. No other exclusion contained in the 2019 Policy or the 2020 Policy precludes coverage.

33.     The Virus Coverage provides coverage for Plaintiffs' losses. The presence of the coronavirus resulted from an act of vandalism that allowed the coronavirus to escape into the general population, ultimately migrating to the United States. Vandalism is a "specified cause of loss" under both the 2019 Policy and the 2020 Policy. Alternatively, Plaintiffs' losses and damages otherwise resulted from the virus and therefore fall within the Virus Coverage provision.

34.     The coronavirus's presence also caused loss and damage to property throughout the state, including areas immediately surrounding each of the Scheduled Premises. As a result of the presence of the coronavirus, COVID-19, the pandemic, and/or fear of the pandemic, the City of Alpharetta, the State of Georgia, and other state and local governments issued shelter in place orders. The orders prevented and/or sufficiently discouraged individuals who otherwise would have lodged at Plaintiffs' hotels from traveling or caused them to make other lodging arrangements. Plaintiffs' losses and/or damages resulting from the orders fall within the scope of the Civil Authority coverage provided by the 2019 Policy and the 2020 Policy.

35.     The coronavirus's presence also caused loss and/or damage to property and premises contiguous to the Scheduled Premises. As a result, ingress and egress to the Scheduled Premises was prohibited, and Plaintiffs suffered losses and damages caused by a significant reduction in the numbers of hotel guests.

36.     Plaintiffs purchased the 2019 Policy and the 2020 Policy expecting to be insured against losses, including, without limitation, business income losses at the

9

Copy from re:SearchGA

Scheduled Premises.

37.     Plaintiffs purchased the 2019 Policy and the 2020 Policy with the expectation that they were purchasing policies that would provide coverage in the event their businesses were interrupted and/or they incurred extra expenses as a result of damages caused by COVID-19, the governmental orders, and the pandemic.

38.     Plaintiffs had a reasonable expectation that their policies' business interruption coverage applied where a civil authority issued orders such as the shelter in place orders issued by local and state governments such as the City of Alpharetta, the State of Georgia, and others throughout the nation that resulted in the interruption of Plaintiffs' business and caused Plaintiffs to incur extra expenses.

WHEREFORE, Plaintiffs demand a judgment in their favor declaring:

A.     That the coronavirus, COVID-19, the governmental orders, the pandemic, and/or the public's fear of the pandemic have caused direct physical loss and/or direct physical damage to Plaintiffs' hotels and to property contiguous to and in the immediate area of Plaintiffs' hotels;

B.     That the 2019 Policy and the 2020 Policy provide coverage for the losses and/or damages sustained by Plaintiffs' hotels;

C.     That the Virus Coverage provides coverage for the losses and/or damages sustained by Plaintiffs' hotels;

D.     That the Civil Authority coverage provides coverage for the losses and/or damages sustained by Plaintiffs' hotels;

E.     That the Ingress and Egress coverage provides coverage for the losses and/or damages sustained by Plaintiffs' hotels;

10

Copy from re:SearchGA

F.     That the extended income and future earnings provisions extend the coverages provided by the 2019 Policy and the 2020 Policy to such time as Plaintiffs' hotels' normal operations and profits are restored, up to two (2) years following the date of the cause of the loss; and

G.     That no exclusion precludes coverage for the losses and/or damages sustained by Plaintiffs' hotels.

Plaintiffs also seek costs, attorneys' fees, and such further relief as the Court deems just and equitable.

## COUNT TWO: BREACH OF CONTRACT

39.     Plaintiffs adopt and incorporate paragraphs 1 – 38 as if fully set forth herein.

40.     Hartford breached the 2019 Policy and the 2020 Policy by: (1) failing to pay for Plaintiffs' actual business income losses and extra expenses incurred due to the necessary interruption of their business operations; (2) denying liability under the Business Income and Extra Expense Coverage provided by the 2019 Policy and the 2020 Policy; (3) denying liability under the Civil Authority coverage provisions of the 2019 Policy and the 2020 Policy; (4) denying liability under the Virus Coverage provided by the 2019 Policy and the 2020 Policy; and/or (5) relying on inapplicable and/or unenforceable policy exclusions to refuse to provide coverage for Plaintiffs' losses and damage.

41.     Plaintiffs have sustained losses and damages as a result of Hartford's breach of the 2019 Policy and 2020 Policy. These include, without limitation, lost profits. Plaintiffs' lost profits to date have exceeded $2,100,000 and are anticipated to exceed $5,700,000.

11

Copy from re:SearchGA

[Notice of Removal, Exhibit A, Page 60]

WHEREFORE, Plaintiffs demand judgment against Hartford for compensatory damages, including, without limitation, lost profits, in an amount to be determined by a jury as a result of Hartford's breach of the 2019 Policy and the 2020 Policy. Plaintiffs also seek costs, expenses, attorneys' fees, and such further relief that the Court deems just and equitable.

## COUNT THREE: BAD FAITH

42.    Plaintiffs adopt and incorporate paragraphs 1 – 41 as if fully set forth herein.

43.    Hartford owed Plaintiffs a duty of good faith with respect to its performance of its contractual obligations under the 2019 Policy and the 2020 Policy.

44.    Hartford breached its duty of good faith in the performance of its obligations under the 2019 Policy and the 2020 Policy. Hartford knew that it had no legitimate basis for refusing to provide coverage. Further, Hartford failed to conduct a material or adequate investigation of Plaintiffs' claims, applied an unreasonably restrictive construction to the policies' coverage provisions, applied an unreasonably broad construction to the policies' exclusions, failed to properly evaluate the claims, created its own debatable reason for denying the claims, and/or relied on ambiguous, inapplicable, and/or unenforceable policy provisions in an effort to avoid performance of its contractual obligations and deny the claims. Hartford's conduct constituted a bad faith breach of the 2019 Policy and the 2020 Policy.

45.    Plaintiffs have sustained damages as a result of Hartford's breach of its obligation of good faith.

46.    Hartford is liable to Plaintiffs for bad faith denial of coverage under the 2019 Policy and the 2020 Policy.

12

Copy from re:SearchGA

[Notice of Removal, Exhibit A, Page 61]

WHEREFORE, Plaintiffs demand judgment against Hartford for compensatory, statutory, and punitive damages, including, without limitation, lost profits, in an amount to be determined by a jury. Plaintiffs also seek costs, expenses, attorneys' fees, and such further relief that the Court deems just and equitable.

### COUNT FOUR: NEGLIGENT, WANTON, AND RECKLESS CONDUCT
### BY THE CITY OF ALPHARETTA

47.     Plaintiffs adopt and incorporate paragraphs 1 – 46 as if fully set forth herein.

48.     The City of Alpharetta negligently, wantonly, and/or recklessly adopted the shelter in place ordinance. The City of Alpharetta failed to investigate adequately the harm the coronavirus posed to the public and the harm a shelter in place ordinance would pose to the economic interests of businesses such as Plaintiffs that rely on individuals' freedom to travel. The City of Alpharetta owed duties to Plaintiff RAM Alpharetta Hospitality to adequately and properly consider the economic harm the shelter in place ordinance would cause to RAM Alpharetta Hospitality, and breached its duty by failing to do so.

49.     As a direct and proximate result of the City of Alpharetta's wrongful adoption of the shelter in place ordinance, Plaintiff RAM Alpharetta Hospitality has suffered loss and damage. The City of Alpharetta owed a duty to Plaintiff RAM Alpharetta Hospitality to adequately and properly to consider the economic harm the shelter in place ordinance would cause to RAM Alpharetta Hospitality, and breached its duty by failing to do so. The City of Alpharetta failed to tailor its "shelter in place" ordinance to protect RAM Alpharetta Hospitality's business interests. The City of Alpharetta should have adopted less restrictive methods for addressing the spread of the coronavirus, by limiting the order to ordering mask wearing, social distancing, temperature taking, and/or other less restrictive ways to curb the coronavirus's spread rather than including in its ordinance an order that

13

Copy from re:SearchGA

[Notice of Removal, Exhibit A, Page 62]

individuals shelter in place. Any additional protection gained by ordering citizens to shelter in place was marginal in relation to the substantial disruption that occurred to the economy and to RAM Alpharetta Hospitality's business as a result of the order to shelter in place.

50.     As a direct and proximate result of the City of Alpharetta's wrongful adoption of the shelter in place ordinance, Plaintiffs RAM Alpharetta Hospitality suffered loss and damage. Hotel revenues and profits dropped significantly following the imposition of the shelter in place ordinance, and Plaintiff RAM Alpharetta Hospitality has incurred extra expenses as a result of the ordinance. It continues to lose revenue and incur extra expenses as a result of the City of Alpharetta's shelter in place order.

51.     The City of Alpharetta has liability insurance that provides coverage for the claims asserted against it by RAM Alpharetta Hospitality in this litigation.

52.     The City of Alpharetta is liable to Plaintiff RAM Alpharetta Hospitality for the loss and damage caused by the City of Alpharetta's wrongful conduct.

WHEREFORE, Plaintiff RAM Alpharetta Hospitality demands judgment against the City of Alpharetta for damages, including, without limitation, lost profits, in an amount to be determined by a jury. Plaintiff RAM Alpharetta Hospitality also seeks costs, expenses, attorneys' fees, and such further relief that the Court deems just and equitable.

## COUNT FIVE: NEGLIGENT, WANTON, RECKLESS, ARBITRARY, AND CAPRICIOUS VIOLATION OF STANDARDS ESTABLISHED BY STATUTORY LAW BY THE CITY OF ALPHARETTA

53.     Plaintiffs adopt and incorporate paragraphs 1 – 52 as if fully set forth herein.

54.     The City of Alpharetta negligently, wantonly, recklessly, arbitrarily, and/or capriciously adopted the shelter in place ordinance in violation of the due process protections guaranteed by the Georgia Constitution. In addition, Plaintiff RAM Alpharetta

14

Copy from re:SearchGA

Hospitality was denied a meaningful opportunity to be heard before the City of Alpharetta adopted the shelter in place ordinance,

55.    As a direct and proximate result of the City of Alpharetta's wrongful adoption of the shelter in place ordinance, Plaintiff RAM Alpharetta Hospitality has suffered loss and damage, including, without limitation, lost profits.

56.    The City of Alpharetta is liable to Plaintiff RAM Alpharetta Hospitality for the loss and damage caused by the City of Alpharetta's wrongful conduct.

WHEREFORE, Plaintiff RAM Alpharetta Hospitality demands judgment against the City of Alpharetta for damages, including, without limitation, lost profits, in an amount to be determined by a jury. Plaintiff RAM Alpharetta Hospitality also seeks costs, expenses, attorneys' fees, and such further relief that the Court deems just and equitable.

### COUNT SIX: DEMAND BY RAM ALPHARETTA HOSPITALITY FOR JUST COMPENSATION FROM THE CITY OF ALPHARETTA PURSUANT TO THE CONSTITUTION OF THE STATE OF GEORGIA

57.    Plaintiffs adopt and incorporate paragraphs 1 – 56 as if fully set forth herein.

58.    The "Just Compensation" clause of the Constitution of the State of Georgia, Article 1, § 3, ¶ 1, provides that no governmental entity shall take or damage property without just compensation. The Just Compensation clause is applicable to the City of Alpharetta.

59.    The City of Alpharetta's adoption of the shelter in place ordinance caused damage to RAM Alpharetta Hospitality and/or constituted a "taking" of RAM Alpharetta Hospitality's property that requires just compensation pursuant to the Constitution of the State of Georgia. The shelter in place ordinance deprived RAM Alpharetta Hospitality

15

Copy from re:SearchGA

from receiving the economic benefits it was entitled to pursue as a business entity organized and existing pursuant to the laws of the State of Georgia.

60. The City of Alpharetta is obligated to provide just compensation to Plaintiff RAM Alpharetta Hospitality for the loss and damage caused by the City of Alpharetta's adoption shelter in place ordinance.

WHEREFORE, Plaintiff RAM Alpharetta Hospitality demands judgment against the City of Alpharetta for just compensation for the lost income, revenues, and profits Plaintiff RAM Alpharetta Hospitality sustained as a result of the City of Alpharetta's adoption of the shelter in place ordinance, and such further relief that the Court deems just and equitable.

## COUNT SEVEN: DECLARATORY JUDGMENT AGAINST THE CITY OF ALPHARETTA

61. Plaintiffs adopt and incorporate paragraphs 1 through 60 as if fully set forth herein.

62. Plaintiffs seek a declaratory judgment relating to the present controversy. A bona fide, actual, and present practical need exists for a declaratory judgment regarding the City of Alpharetta's actions in adopting the shelter in place ordinance. Plaintiffs and the City of Alpharetta have actual, present, adverse, and antagonistic interests in the subject matter of the relief Plaintiffs request.

WHEREFORE, Plaintiffs demand a judgment in their favor declaring:

A. That the City of Alpharetta negligently, wantonly, recklessly, arbitrarily, and capriciously adopted the shelter in place ordinance;

16

Copy from re:SearchGA

[Notice of Removal, Exhibit A, Page 65]

B.     That the City of Alpharetta breached duties owed to Plaintiffs to consider the economic harm the shelter in place ordinance would have on businesses such as Plaintiffs;

C.     That the City of Alpharetta failed to narrowly tailor the shelter in place ordinance to protect Plaintiffs' business interests;

D.     That the City of Alpharetta's actions in adopting the shelter in place ordinance violated the due process protections provided by the Georgia Constitution; and

E.     That the City of Alpharetta is obligated under the Constitution of the State of Georgia to provide just compensation to Plaintiff RAM Alpharetta Hospitality for the loss and damage caused by the City of Alpharetta's adoption of the shelter in place ordinance.

Respectfully submitted,

_____
W. Donald Morgan, Jr.
Alston Lyle
Morgan & Lyle, P.C.
P.O. Box 2056
1214 First Avenue
Suite 204
Columbus, GA 31902
Phone: 706-221-5286
Fax: 706-221-5066
Email: dmorgan@morganandlyle.com
Email: alyle@morganandlyle.com

**OF COUNSEL:**

**MORGAN & LYLE, P.C.**

AND

Attorneys for Plaintiffs

s/ James A. Harris, III
James A. Harris, III (*HAR141*)

Copy from re:SearchGA

[Notice of Removal, Exhibit A, Page 66]

Clyde O. Westbrook, III (*WES025*)
Shipt Tower, Suite 2450
420 20th Street North
Birmingham, AL 35203
TEL: 205-871-5777
FAX: 205-871-0029
Email: jamey@harris-harris.com
Email: tres@harris-harris.com

**OF COUNSEL:**

**HARRIS & HARRIS, LLP**

Attorneys for Plaintiffs, subject to
admission *Pro Hac Vice*, application
pending.

**JURY DEMAND**

**Plaintiffs demand a trial by struck jury.**

OF COUNSEL

**DEFENDANTS TO BE SERVED BY PROCESS SERVER:**

Hartford Fire Insurance Company
c/o Registered Agent – CT Corporation System
289 S. Culver Street
Lawrenceville, GA 30046-4805

City of Alpharetta
c/o Mayor Jim Gilvin
2 Park Plaza
Alpharetta, GA 30009

Copy from re:SearchGA

| GEORGIA HOTELS | | |
|---|---|---|
| **Entity** | **Hotel Brand** | **Property Address** |
| RAM Hotel Management, LLC | Corporate Office | 233 12th St Suite 301 Columbus, GA 31901 |
| Niravana Hospitality, LLC | Home2 Suites By Hilton | 1664 Whittlesey Rd Columbus, GA 31904 |
| Columbus Hospitality, LLC | Best Western | 4027 Veterans Ct Columbus, GA 31909 |
| RAM Alpharetta Hospitality, LLC | Home2 Suites By Hilton | 12075 Morris Road Alpharetta GA 30004 |
| RajAbhinand Hotel, LLC | Residence Inn by Marriott | 2670 Adams Farm Dr, Columbus, GA 31909 |

EXHIBIT A

Copy from re:SearchGA

Civil Action No. 2021 CV 345760

Date Filed 2-11-2021

Superior Court ☑

State Court ☐

Georgia, MUSCOGEE COUNTY (Fulton)

RAM Hotel Management, LLC et. al

Attorney's Address
W. Donald Morgan, Jr.
1214 1st Avenue, Ste 204
Columbus, GA 31901

_____ Plaintiff

VS.

Hartford Fire Insurance Company and City of Alpharetta

Name and Address of Party to be Served

City of Alpharetta _____ Defendant

2 Park Plaza

Alpharetta, GA 30009 _____ Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

I have this day served the defendant City of Alpharetta personally with a copy of the within action and summons. Complaint, Summons, Notice of Deposition, Rule 5.2 Cert., Discovery Requests

**NOTORIOUS**

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

Served the defendant City of Alpharetta a corporation by leaving a copy of the within action and summons with James Drinkard in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This 2nd day of March, 20 21

JMcEachin #3129
DEPUTY

SHERIFF DOCKET _____ PAGE _____

MUSCOGEE COUNTY, GEORGIA

SC-2 Rev.85

Copy from re:SearchGA

[Notice of Removal, Exhibit A, Page 69]

Civil Action No. 2021CV345760

Date Filed 2-11-2021

Superior Court

State Court ☐

Record ☑ 21006570

Georgia, ~~MUSCOGEE~~ Gwinnett COUNTY
RAM Hotel Management, LLC et. al

Attorney's Address

W. Donald Morgan, Jr.
1214 1st Ave, Ste. 204
Columbus, GA 31901

Plaintiff

VS.

Hartford Fire Insurance Company and City of Alpharetta

Name and Address of Party to be Served

Hartford Fire Insurance Company

Defendant

289 S. Culver Street

Lawrenceville, GA 30046

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant First Amended Complaint personally with a copy of the within action and summons.

**NOTORIOUS** ☐ I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☑ Served the defendant Hartford Fire Insurance Company a corporation by leaving a copy of the within action and summons with Linda Banks in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _____ 9 _____ day of _____ Mar _____, 20 21 .

Jim Carr 50300
DEPUTY

SHERIFF DOCKET _____ _____ PAGE _____

~~MUSCOGEE~~ COUNTY, GEORGIA
Gwinnett

SC-2 Rev.85